# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| HOWARD E. SHOULTZ, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-cv-1046 |
| | ) | |
| ILLINOIS STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R   &   O P I N I O N

This matter is before the Court on Defendant's Motion for Summary Judgment, filed July 15, 2011. (Doc. 14). Plaintiff has filed his Response,[1] and Defendant has filed its Reply; the Motion is now fully briefed and ready for decision. (Docs. 18 & 19). For the reasons stated below, Defendant's Motion for Summary Judgment is granted.

As the Court herein determines that Defendant is entitled to summary judgment, Plaintiff's "Motion for Summary Judgment" (Doc. 16), as a motion, is moot. Even if it were not moot, the Court would strike Plaintiff's "Motion for Summary Judgment," insofar as it is intended as a motion, for two reasons. First, it is untimely, as the deadline for dispositive motions was July 15, 2011; Plaintiff's

---

[1] On September 21, 2011, the Court, noting that Plaintiff had filed a document titled a "Motion for Summary Judgment" rather than a Response to Defendant's Motion for Summary Judgment, granted Plaintiff another chance to file a proper Response to Defendant's Motion for Summary Judgment. (9/21/2011 Text Order). On October 12, 2011, Plaintiff filed his Response, which consisted mainly of the narrative from Plaintiff's earlier "Motion," and which included responses to Defendant's Statement of Undisputed Material Facts. (Doc. 18). The Court now relies on Plaintiff's Response in its consideration of Defendant's Motion for Summary Judgment.

Motion was filed August 2, 2011. Plaintiff did not seek an extension of time, and did not move for leave to file his Motion late; he also does not argue that his late filing was due to excusable neglect (this untimeliness contributes to the Court's belief that the "Motion" was actually intended as a response, as it was filed within the time allowed for a response). The Seventh Circuit has repeatedly held that a district court is within its discretion to enforce its deadlines by refusing to allow late filings. *See, e.g., Raymond v. Ameritech Corp.*, 442 F.3d 600, 605-07 (7th Cir. 2006). Second, it makes absolutely no attempt to conform to either the Local Rules or the Federal Rules of Civil Procedure: there are no numbered statements of material fact, the statements of fact that are embedded in Plaintiff's narrative are not supported by citations to evidence, and Plaintiff makes no argument that cites to legal authority. FED. R. CIV. P. 56(C); Local Rule 7.1(D)(1). The Court therefore may strike it. Local Rule 7.1(D) ("All motions for summary judgment and responses and replies thereto must comply with the requirements of this rule. Any filings not in compliance may be stricken by the court."); *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004).[2]

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the Court must view the evidence on record in the light most favorable to the non-

---

[2]    This Court's Local Rules apply to *pro se* litigants, and Plaintiff has made no argument that an exception should be made in his case. Local Rule 7.1(D)(6).

2

moving party. *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant; however, the Court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). The Court draws only reasonable inferences. *Id.*

"Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are 'obliged in our adversary system to scour the record looking for factual disputes....'" *Greer v. Board of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1993)). This rule holds even in the case of a *pro se* litigant. *Id.* Once the movant has met its burden of showing the Court that there are no genuine issues of material fact, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, however, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

BACKGROUND[3]

In 2008, Plaintiff, who is white, had worked for Defendant at Illinois State University ("University") for six years, and was over 40 years old. (Doc. 1 ("Complaint") at 17; Doc. 14, Ex. 1 ("Shoultz Dep.") at 13-14). He was a route driver in the University Recycling Department, driving a tandem garbage truck to pick up cardboard and paper on campus. (Shoultz Dep. at 7). This job required that he have the physical ability to lift and carry 70 pounds regularly, as well as perform work requiring pushing, pulling, and physical exertion in varied weather conditions. (Doc. 14, Ex. 2 at 2).

Because Plaintiff felt he was getting older and wanted "a little easier job," he applied for an open route driver position in Marketing and Communications; Plaintiff would have made the same amount of money in this job. (Shoultz Dep. at 13, 25). The route driver position in Marketing and Communications requires that the employee be able to lift 65 pounds to shoulder height 40 times a day and be able to lift 65 pounds to waist height 160 times a day. (Doc. 14, Ex. 4 at 3). Plaintiff was not hired for the position; instead, Alan Middlestead, who was less than 40 years old, was hired. (Shoultz Dep. at 36, 38). Mr. Middlestead had not previously worked for the University and Plaintiff believes that he did not know the campus as well as did Plaintiff, but Defendant has explained that he was hired because his rate of pay

---

[3]    These background facts are drawn from the parties' respective statements of material facts, and are undisputed unless otherwise indicated. Facts that are immaterial to the disposition of the Motion for Summary Judgment are excluded. The Court notes that Plaintiff's "Additional Material Facts" are simply 14 of Defendant's original stated facts, with no changes or additional citations to evidence, and so they are of course undisputed. (Doc. 14-1 at 7-8; Doc. 18 at 5-6; Doc. 19 at 1).

was lower than Plaintiff's and because he would be subject to a six-month probationary period. (Shoultz Dep. at 13-14; Doc. 14, Ex. 6 at 6). Plaintiff admits that he was not told that his age was the reason he was denied the job, and that his only reason for believing this is that Mr. Middlestead was younger and, in his opinion, less qualified. (Shoultz Dep. at 21-22, 45). He attributes this alleged age discrimination to Linda Foster and Connie Fletcher. (Shoultz Dep. at 56-57).

Around February or March 2008, Greg Shack was transferred by the University into Plaintiff's work group; the University had eliminated Mr. Shack's previous position when it consolidated all the recycling employees into Plaintiff's work group.[4] (Shoultz Dep. at 18, 55, 71). Mr. Shack, who is African-American,[5] came into Plaintiff's group at a higher seniority level than Plaintiff, as he had been employed at the University for at least six months longer than Plaintiff. (Shoultz Dep. at 50-51). In addition to allowing him to transfer, Plaintiff believes that Mr. Shack was treated more favorably than him on the basis of his race in that he brought his accumulated seniority with him when he transferred, and was not required to take a test, be interviewed, have a commercial drivers' license, or have a medical card in order to be transferred. (Shoultz Dep. at 51, 58). Plaintiff believes

---

[4]    Plaintiff disputes Defendant's assertion that all the recycling employees were moved to the same group, stating that "the only employee that was moved into my area was Mr. Shack." (Doc. 18 at 4). However, Plaintiff cites no evidence for this assertion, which directly contradicts his deposition testimony agreeing that with the statement that "[a]s far  as all the recycling employees at ISU they were all moved into the same group." (Shoultz Dep. at 18). There is therefore no genuine dispute as to this fact.

[5]    Mr. Shack is also seven years younger than Plaintiff, but Plaintiff does not claim that his transfer amounted to age discrimination. (DSUMF ¶¶ 21; Doc. 18 at 7-9).

that it was Ms. Foster and Ms. Holman who discriminated against him in this instance. (Shoultz Dep. at 56).

Plaintiff also believes that Defendant engaged in race and age discrimination because it allowed Mr. Shack, who is seven years younger than Plaintiff, and, as noted above, African-American, to work with a five-pound weight restriction, while Plaintiff was not allowed to work with a 25-pound weight restriction.[6] (Shoultz Dep. at 32-33). Plaintiff injured his shoulder in 2008, and worked with various medical weight restrictions between July and September 2008, but reported in September that he could not work with his 35-pound weight restriction. (Shoultz Dep. at 62, 65-68; Doc. 14, Ex. 9; Doc. 14, Ex. 10; Doc. 14, Ex. 11). On September 26, 2008, Plaintiff was released by his doctor to work with a 25-pound restriction, but the University had no work for him with that restriction; he was scheduled be off work after October 2, 2008, as he was to have shoulder surgery on that date. (Shoultz Dep. at 67-68; Doc. 14, Ex. 11; Doc. 14, Ex. 12). Plaintiff testified that he could not perform the functions of his job with a 25-pound weight restriction. (Shoultz Dep. at 95). Plaintiff has been off work since September 26 or 28, 2008, first on paid worker's compensation leave, then on paid medical disability leave.[7] (Shoultz Dep.

---

[6]     Defendant assumes, and Plaintiff testified, that the weight-restriction complaint underlies both Plaintiff's age and racial discrimination claims. In his Response, Plaintiff appears to drop the argument that the weight-restriction issue was based on his age, but the Court will consider it for both claims in the interest of a thorough disposition. (Doc. 18 at 7-9).

[7]     Plaintiff disputes the assertion that he was paid the entire time he was off, stating that he has "not been getting the workman's [compensation] pay which is 66.2/3% [*sic*] of sal[a]ry tax free, I have been receiving medical leave of absence which is 50% taxable income." (Doc. 18 at 5). Plaintiff cites no evidence in support of his dispute, but in any event, he was paid as Defendant asserts and as he admitted

at 6, 62; Doc. 14, Ex. 6 at 3). Mr. Shack worked for a couple of weeks in Plaintiff's department with a five-pound restriction, but then went on leave. (Shoultz Dep. at 71). Plaintiff believes that Ms. Foster was responsible for this alleged race and age discrimination.[8] (Shoultz Dep. at 73).

Plaintiff filed a complaint with the Illinois Department of Human Rights and the EEOC in June of 2008, making the claims of race and age discrimination discussed above. (Doc. 1 at 17). Plaintiff's son, Howard, also works at the University, in a different division with a different foreman from Plaintiff, but with the same superintendent. (Shoultz Dep. at 86). Plaintiff claims that, on January 17, 2010, and for some period of time prior to that, Howard was subjected to harassment motivated by retaliation against Plaintiff because of Plaintiff's discrimination complaints.[9] (Shoultz Dep. at 84-85, 87-88). Finally, Plaintiff's wife,

---

in his deposition, just not as much as he would like; he does not make any argument that this difference in pay is due to discrimination.

[8]    In his Response, Plaintiff alludes to Ms. Foster giving Mr. Shack extra help with his duties while he was working with the five-pound weight restriction, but he cites no evidence in support of this allegation. (Doc. 18 at 9). Reviewing the evidence on record (all of which was submitted by Defendant), the Court finds no such evidence. Without more to go on, the Court cannot find that Plaintiff has adequately supported this allegation "extra help" so as to create a genuine issue of fact.

[9]    In his deposition, Plaintiff, when asked about "discrimination against [his] son," replied "it is sexual harassment gender and age," which Defendant interpreted in its Statement of Undisputed Material Facts as "sexual harassment, based on gender and age." (Shoultz Dep. at 84-85). Whatever distinction there is between these two phrases is immaterial; the crux of the matter is that Howard was allegedly mistreated by his employer in retaliation for his father's claims of discrimination.
       As described in Howard's complaint to the ISU Office of Equal Opportunity, Ethics and Access, and Plaintiff's deposition, Howard had a dispute on January 17, 2010 with Jeff Schaeffer, who stated to Howard that he had seen Howard sitting in a bathroom stall during work hours, threatened to check that his area was clean at

Mary, also works for the University, and he believes that she, too, was subject to unfavorable treatment because of his claims; in June 2010 she was granted only one day off instead of the two days she requested, while others were allowed to take that day off. (Shoultz Dep. at 9, 90).

**DISCUSSION**

Plaintiff claims that he was discriminated against on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), and race, in violation of Title VII, and that Defendant unlawfully retaliated against him for complaining of this discrimination by treating his wife and son unfavorably in their jobs. (Doc. 1 at 6-7).[10] Defendant moves for summary judgment as to each of these claims. (Doc. 14).

## I.     Discrimination

A threshold element of a discrimination claim is that the employer must have taken at least one "materially adverse employment action;" the law does "not forbid every act of invidious discrimination that an employer might commit against an

---

a particular time, took pictures of his work area, and threatened to write him up for taking an inappropriate break, loafing, and work performance. (Doc. 14, Ex. 7; Shoultz Dep. at 84-88). Howard also complained that, at some indeterminate time, Lori Schlink harassed him by complaining to the foremen about him and speaking disrespectfully of him. (Doc. 14, Ex. 7). Plaintiff testified in his deposition that "the woman started cussing at [Howard], telling him he needs to do her job and stuff, and he told her he didn't;" Howard was reprimanded, investigated, and written up in relation to this. (Shoultz Dep. at 84).

[10]     Plaintiff's Complaint form does not include the claim related to the weight restriction, but only complains of the denial of his transfer request and alleged retaliation against his family. (Doc. 1 at 6-7). As Plaintiff does make this claim in his EEOC documents and his Response to Defendant's Motion for Summary Judgment, however, the Court will, construing Plaintiff's *pro se* pleadings liberally, consider it.

employee." *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 744-45 (7th Cir. 2002). To be liable for discrimination against an existing employee, an employer must diminish the employee's "compensation, fringe benefits, or other financial terms of employment;" transfer the employee in such a way that "significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted;" change the employee's job "in a way that injures his career;" or change the employee's work conditions "in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment-an alteration that can fairly be characterized as objectively creating a hardship." *Id.* at 744 (citations omitted).

Here, Plaintiff alleges two potential "materially adverse employment actions" allegedly motivated by age and race discrimination:  failing to laterally transfer him to the Marketing and Communications route driver position, and not allowing him to work with a 25-pound weight restriction.[11] As a matter of law, the denial of the

---

[11]     Plaintiff testified that when Mr. Shack was transferred into his department, he brought his accumulated seniority with him, and was not required to take a test, be interviewed, have a commercial drivers' license, or have a medical card. (Shoultz Dep. at 58). Though Plaintiff does not cite this testimony as evidence, the Court believes that these assertions are intended to support Plaintiff's argument for causation, discussed below, rather than to themselves constitute "materially adverse employment actions." Plaintiff does not allege that he suffered any material harm from Mr. Shack's allegedly preferential treatment in any of these areas, and the Court does not find that they would constitute "materially adverse employment actions" – for instance, Plaintiff does not allege that he lost seniority, that he failed the applicable test, did not have a commercial drivers' license, or did not have a medical card, and so none of these differences between himself and Mr. Shack harmed him.
        Though he does not specifically make this argument or cite any evidence, it may be that Plaintiff is alleging that he was displaced from his position in the

lateral transfer was not a "materially adverse employment action." In *Herrnreiter*, the Seventh Circuit confirmed that the denial of a lateral transfer where the plaintiff has merely a "purely subjective preference for one position over another" is not a materially adverse employment action. 315 F.3d at 745. *See also Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1116-17 (7th Cir. 2009). Here, Plaintiff has admitted that he would not have been eligible for a pay increase if he had obtained the route driver position in Marketing and Communications, and he does not allege that he would have received better benefits or enhanced career advancement prospects. (Shoultz Dep. at 25). In fact, Plaintiff testified that he sought the route driver position simply because it would be an easier job. (Shoultz Dep. at 13). Failing to fulfill such a "purely subjective preference" does not constitute an adverse employment action.

Defendant's decision not to allow Plaintiff to continue working with a 25-pound weight restriction is a closer question. Plaintiff's job required that he have the ability to lift and carry 70 pounds regularly, but Plaintiff admitted that he could not perform the functions of his job with a 25-pound weight restriction. (Doc. 14, Ex. 2 at 2; Shoultz Dep. at 95). Moreover, Plaintiff was scheduled to be off work for

---

seniority ranking within the department by Mr. Shack's transfer (Doc. 18 at 8), but he does not allege any harm that he suffered from such a displacement, so it cannot constitute a "materially adverse employment action." Moreover, it is apparent, as Plaintiff admitted in his deposition, that issues of seniority are governed by Defendant's collectively bargained contract with the union; he appears to claim that Defendant's actions violated the terms of the contract. (Shoultz Dep. at 51; Doc. 18 at 8). Where the contract is not in evidence, and there is no evidence of whether Plaintiff grieved the supposed violation of the contract or of whether the union agreed with him that the contract had been violated, the Court cannot rely solely on Plaintiff's interpretation of its terms to find that this constitutes a "materially adverse employment action." Similarly, there is simply too little information for this to constitute evidence that would contribute to an inference of discrimination.

surgery after October 2, 2008, so he missed, at most, four days of work due to the University's decision to put him on paid worker's compensation leave, then medical disability leave beginning September 26 or 28, rather than October 2, 2008. However, as he apparently experienced a reduction in pay for those few additional days as a result, the Court will proceed to determine whether Plaintiff has shown the existence of a genuine issue of material fact on the question of whether this action was caused by a discriminatory motive. Plaintiff claims that this action was motivated by both age and racial discrimination.

Age discrimination is prohibited by the ADEA, 29 U.S.C. § 621 *et seq.*, while racial discrimination is prohibited by Title VII, 42 U.S.C. § 2000e *et seq.*, but for both age and race discrimination, plaintiffs can proceed under the same two basic frameworks to show that discrimination caused the "materially adverse employment action:" the "direct" or "indirect" methods. *Nagle*, 554 F.3d at 1114 n. 4 (citing *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 n. 4 (7th Cir.2003)). The indirect method requires Plaintiff, who claims both age and "reverse" racial discrimination to "show that he is a member of a protected class; he was meeting his employer's legitimate performance expectations; he suffered an adverse employment action; and he was treated less favorably than similarly situated individuals who are not white or over 40." *Nagle*, 554 F.3d at 1119 (citing *Ineichen v. Ameritech*, 410 F.3d 956, 959 (7th Cir. 2005)). As the Seventh Circuit has pointed out, "[t]he prima facie case and pretext analyses often overlap, so we have said that we can proceed directly to the pretext inquiry if the defendant offers a nondiscriminatory reason for

its action." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838 (7th Cir. 2009) (*citing Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007)).

The direct method utilizes either direct or circumstantial evidence.[12] Direct evidence typically constitutes an admission or near-admission that the defendant was motivated by age or race in acting against the plaintiff. As Defendant here points out, there are no such admissions or near-admissions on the record before the Court of any age- or race-based decision-making by Defendant.

A plaintiff may also proceed under the direct method by offering circumstantial evidence to "establish an inference of discrimination." Such evidence includes usually falls into one of three categories:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Nagle*, 554 F.3d at 1114-15 (quoting *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007); citing *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008)).

---

[12]    In its Memorandum in Support of its Motion for Summary Judgment, Defendant falls into the linguistic trap that catches many employment discrimination practitioners: assuming that the "direct" method of proof requires direct, rather than circumstantial, evidence. (Doc. 14-1 at 10). In fact, the "direct" method of proof can proceed with either direct or circumstantial evidence. *See, e.g.*, *Henry v. Jones*, 507 F.3d 558, 566 (7th Cir. 2007) (quoting *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir.2006)) ("Although labeled the 'direct' method of proof, this method 'is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion…, but also includes circumstantial evidence which suggests discrimination albeit through a longer chain of inferences.'"). Defendant is correct, however, that Plaintiff offers insufficient evidence to survive summary judgment under the direct method.

12

There is obviously some overlap between the indirect and direct methods of proof, especially between the third form of circumstantial evidence under the direct method and the indirect method of proof; the third form is almost identical to the indirect method of proof, and so will be discussed simultaneously with it, below.

### A.    Age Discrimination

Plaintiff's claim of age discrimination is based on Defendant hiring Mr. Middlestead, rather than him, for the route driver position in Marketing and Communications, and on Defendant allowing Mr. Shack to work with a five-pound weight restriction while he was not allowed to work with a 25-pound restriction. As noted above, the denial of Plaintiff's transfer request was not a materially adverse employment action within the terms of the ADEA, and so the Court need not proceed to the question of whether it was motivated by age discrimination.[13] Plaintiff also fails to establish a genuine issue of material fact as to whether Defendant was motivated by age discrimination in not allowing him to work with a 25-pound weight restriction, under either the indirect or the direct methods of proof.

---

[13]    In any event, Plaintiff could not prove that the denial of the transfer was motivated by age discrimination. Defendant has asserted that it hired Mr. Middlestead rather than Plaintiff because his rate of pay was lower than Plaintiff's and because he would be subject to a six-month probationary period, and Plaintiff has put on no evidence to raise the inference that this legitimate, nondiscriminatory reason was a pretext for discrimination. (Doc. 14, Ex. 6 at 6). Plaintiff opines that Mr. Middlestead was not as qualified as he was for the position, but he offers no proof of this other than his own opinion. *Hall v. Forest River, Inc.*, 536 F.3d 615, 620 (7th Cir. 2008). Hiring an employee who will come in at a lower rate of pay and be subject to a probationary period is a rational business decision, and does not lead to an inference of discrimination under the direct or indirect methods of proof. Plaintiff has no other evidence that this action was discriminatory.

### 1.   Indirect Method

As noted above, if a defendant proffers a legitimate, nondiscriminatory reason for the complained-of employment action, the Court can "proceed directly to the pretext inquiry." *Scruggs*, 587 F.3d at 838. Defendant has proffered a legitimate, nondiscriminatory reason for its decision not to allow Plaintiff to work with the 25-pound weight restriction. The Court will therefore assume without deciding that Plaintiff could make out his prima facie case under the indirect method, and will proceed to the analysis of whether Defendant's given reason was pretextual. [14]

Defendant asserts that it did not allow Plaintiff to work with the 25-pound weight restriction because he could not perform the requirements of the position, as well as because he was scheduled to be off work for surgery beginning less than a week after the 25-pound weight restriction was given. Plaintiff must both show that this reason was false *and* that it was merely a pretext for discrimination. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). "The pretext analysis focuses on whether the reason was honest and not whether it was accurate or wise." *Id.* (citing *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir.2007)). *See also Jones v. Union Pacific R. Co.*, 302 F.3d 735, 742-43 (7th Cir. 2002) (internal quotations and citations omitted) ("[Plaintiff] must produce significantly probative admissible

---

[14]   However, as Defendant notes, where a proffered comparator is, as here, less than 10 years younger than an age-discrimination plaintiff, there must be additional information indicating that age was considered significant, which Plaintiff does not have. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 659 (7th Cir. 2001) (citing *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 892-93 (7th Cir. 1997)) (seven-year difference presumptively insubstantial under ADEA so plaintiff required to put on more evidence). Plaintiff and Mr. Shack were only seven years apart in age.

evidence from which the trier of fact could infer that the employer's reason was false *and* that the actual reason was discriminatory.") (emphasis in original).

Plaintiff has presented no evidence to show either that the given reason is false or that it is a pretext for discrimination. There is no reason to disbelieve that Defendant determined that Plaintiff was not able to do his work after he was given the 25-pound weight restriction, as Plaintiff could not work with his earlier 35-pound restriction. Plaintiff himself admitted that he could not perform the demands of his job with these restrictions. Indeed, Plaintiff was allowed to attempt to work from August 5 until September 26 with a 35-pound restriction, and found that he could not perform his duties; he then sought medical advice, and his doctor recommended the 25-pound restriction. Defendant looked at the facts that Plaintiff could not perform his duties and that he would be having surgery in a few days that would require a lengthy period of recuperation, and decided to place him on paid worker's compensation leave, then medical disability leave. That was a rational decision from Defendant's perspective; it would make no business sense to keep Plaintiff on full pay if he could not work, especially where he was to begin medical leave in a very short period of time anyway. There is no reason to believe that this explanation is false.

Furthermore, there is no reason to believe that Defendant's actual reason was discriminatory. Plaintiff's only argument on this point is that Mr. Shack was allowed to work for a period of a few weeks with a five-pound weight restriction, but the full story does not indicate that Mr. Shack was treated more favorably. In fact, the five-pound restriction was Mr. Shack's first limitation after his injury, and he

was allowed to attempt work for only a few weeks before Defendant placed him on leave, while Defendant attempted for two months to allow Plaintiff to work while restricted. (Shoultz Dep. at 62-74; Doc. 14, Ex. 6 at 2-4). Defendant eventually determined that neither Plaintiff nor Mr. Shack could work while injured. It thus does not appear that Mr. Shack was in fact treated more favorably than Plaintiff, and thus his situation cannot contribute to a finding that Defendant was motivated by Plaintiff's age in not allowing him to continue working after September 26. Finally, as discussed further below, there is no other evidence that raises the inference that Defendant was discriminatorily motivated. As Plaintiff has failed to show that Defendant's given legitimate, non-discriminatory reason was a pretext for discrimination, he cannot make his case for age discrimination under the indirect method.

### 2.    Direct Method

To withstand summary judgment under the direct method of proof, Plaintiff must show there to be a genuine issue of material fact by pointing to circumstantial evidence that establishes an inference of discrimination, such as "suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group, or evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment." *Nagle*, 554 F.3d at 1114-15. Plaintiff has pointed to no evidence of "suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group" related to his claim of age discrimination.

Neither does Plaintiff have evidence that "similarly situated employees outside the protected class received systematically better treatment." The only other employees Plaintiff points to in relation to his age discrimination claim are Mr. Middlestead and Mr. Shack. While Plaintiff's claim that he was discriminated against when Defendant hired the younger Mr. Middlestead instead of him for the route driver position is not a qualifying "materially adverse employment action," it could be possible for Plaintiff to use Mr. Middlestead's hiring as circumstantial evidence of discrimination. However, Mr. Middlestead was not "similarly situated" to him, both because he could be paid a lower wage than Plaintiff and because he was subject to a probationary period; these two legitimate reasons for the different treatment defeat any inference of discrimination that might have arisen from Mr. Middlestead's hiring. As discussed above, Mr. Shack's situation was also distinct from Plaintiff's, and the Court cannot find that he was in fact treated more favorably than Plaintiff. No reasonable jury could find that these two younger employees "received systematically better treatment" sufficient to raise any inference of age discrimination. Because Plaintiff has failed to raise a genuine issue of material fact on his age discrimination claim, Defendant's Motion for Summary Judgment must be granted as to that claim.

### B.     Race Discrimination

Plaintiff also claims that Defendant engaged in "reverse discrimination" against him when Defendant transferred Mr. Shack to his department with his accumulated seniority intact, though it did not give Plaintiff the lateral transfer that he sought, and when Defendant allowed Mr. Shack to work for a time with a

five-pound weight restriction, while Plaintiff was not allowed to work with a higher restriction. The threshold requirement is that Defendant took a qualifying "adverse action" against Plaintiff; as discussed above, denying Plaintiff the lateral transfer he sought was not a materially adverse employment action, so the Court need not proceed to an analysis of whether it was motivated by discrimination.[15] As for the weight-restriction claim, Plaintiff must either show that he can make out a prima facie case of discrimination, or show "suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group, or evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment" that would raise an inference of discrimination. *Nagle*, 554 F.3d at 1114-15.

### 1.    Indirect Method

Plaintiff does not have the evidence to show or raise the inference of a racially-discriminatory motivation for Defendant's actions under the indirect method of proof. As Plaintiff is white, and alleges that his African-American coworker was more favorably treated, this is a "reverse discrimination" case. In a

---

[15]    Were the Court to engage in this analysis, it would find that Plaintiff has not put on sufficient evidence to withstand summary judgment as to the issue of whether the denial of the transfer was motivated by race. As noted in the following discussion, Plaintiff has not pointed to suspicious "background circumstances" indicating reverse discrimination. Moreover, Defendant has proffered a legitimate, nondiscriminatory reason for allowing Mr. Shack to transfer, though it did not allow Plaintiff to do so: Mr. Shack's entire department was being closed, and both its duties and its employees were moved to other departments. Plaintiff does not give any reason to believe that this rational explanation is a pretext for discrimination, and Plaintiff cites no other evidence that would lead to an inference of discrimination as to this action.

reverse discrimination case, "the first prong of the *McDonnell* test cannot be used. In its stead, a plaintiff must show 'background circumstances' that demonstrate that a particular employer has 'reason or inclination to discriminate invidiously against whites' or evidence that 'there is something "fishy" about the facts at hand.'" *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003) (quoting *Mills v. Health Care Service Corp.*, 171 F.3d 450, 457 (7th Cir. 1999)).

In *Mills v. Health Care Service Corporation*, the Seventh Circuit reviewed cases discussing what these relevant "background circumstances" might be:

> Plaintiffs [in the District of Columbia Circuit] have shown something was "fishy" when they presented evidence of schemes to fix performance ratings to their detriment, that the hiring system seemed rigged against them because it departed from the usual procedures in an "unprecedented fashion," or that they were passed over despite superior qualifications. Another court, applying a variant of the *McDonnell Douglas* test in a reverse discrimination *Bivens* action, held that background circumstances could include situations in which: the person ultimately hired was clearly less qualified than the plaintiff, the hiring authority expressed intense interest in hiring a woman, and there was a pattern of hiring women in the past. Additionally, in *Reynolds v. School Dist. No. 1, Denver, Colorado*, the plaintiff successfully showed background circumstances where she was the only white employee in the department and nearly all of the decision makers were Hispanic.

171 F.3d 450, 455 (7th Cir. 1999) (citing *Duffy v. Wolle*, 123 F.3d 1026, 1036-37 (8th Cir.1997); *Reynolds v. School Dist. No. 1, Denver, Colorado,* 69 F.3d 1523, 1534 (10th Cir.1995); *Harding v. Gray*, 9 F.3d 150, 153-54 (D.C.Cir.1993)). Plaintiff has no similar evidence of background circumstances suggesting that Defendant was likely to discriminate against whites.

Plaintiff points to the case of Mark Alan Cooper, a white former employee of ISU; Plaintiff states that Defendant terminated Mr. Cooper when it eliminated his

19

department, rather than transferring him to another position as it did Mr. Shack. (Doc. 18 at 8). Plaintiff appears to claim Mr. Cooper's case as evidence of suspicious "background circumstances." Mr. Cooper filed an age discrimination claim against ISU in 2000 in Illinois state court for terminating him when it eliminated his department, but his suit was dismissed on sovereign immunity grounds. *Cooper v. Illinois State University*, 772 N.E.2d 396 (Ill. App. Ct. 2002) (abrogated on other grounds by *Blount v. Stroud*, 904 N.E.2d 1 (Ill. 2009)). However, Plaintiff does not put on evidence, and the Illinois appellate court's opinion does not reveal, what department Mr. Cooper worked for, who made the decisions in his case, or whether African-American employees were also terminated under similar circumstances (notably, Mr. Cooper did not claim that he was subject to racial discrimination). Further, Mr. Cooper's case does not appear to have proceeded to the discovery stage, so there the appellate court's opinion does not contain any findings of fact that the Court could rely on as potential evidence; it merely relies on Mr. Cooper's unproven allegations. Without any more information than that Mr. Cooper was a white man who was terminated by ISU, Mr. Cooper's case cannot constitute effective evidence leading to an inference of reverse discrimination at ISU.

In reviewing the transcript of Plaintiff's deposition, provided by Defendant, the Court notes that Plaintiff testified that "[a]ll the other superintendents of that job are African American, they wanted him in there and they put it out for everybody else." (Shoultz Dep. at 55). Of course, as Plaintiff did not cite this testimony in opposition to Defendant's Motion, the Court need not attend to it. *Greer*, 267 F.3d at 727. Even were the Court to take note of this testimony, though,

the Northern District of Illinois recently found that "[a]t least two courts have held that the predominance of minority supervisors, standing alone, does not establish a 'background circumstance.'" *Lupescu v. Napolitano*, 700 F.Supp.2d 962, 974 (N.D. Ill. 2010) (citing *Heasley v. D.C. Gen. Hosp.*, 180 F.Supp.2d 158, 171 (D.C. Cir. 2002); *Plummer v. Bolger*, 559 F.Supp. 324, 329 (D.D.C. 1983)). Plaintiff's speculation that these supervisors "wanted [Mr. Shack] in there and they put it out for everybody else" is not supported by his personal knowledge or any other competent evidence, and so does not raise an inference of reverse discrimination.

Finally, in his deposition, Plaintiff testified that he believed that Defendant preferred African-Americans such as Mr. Shack because Mr. Shack was allowed to carry his accumulated seniority with him, and was not required to take a test, be interviewed, have a commercial drivers' license, or have a medical card when he was transferred to Plaintiff's group. (Shoultz Dep. at 58). As noted above, there is no evidence that Plaintiff was harmed by any of these actions, which Plaintiff claims constituted exceptions to the usual practice. Moreover, Plaintiff was not transferred under circumstances similar to Mr. Shack's,[16] and does not put on any evidence that he would not have been able to carry his seniority, or that he would have had to take a test, be interviewed, and have a CDL and medical card if he transferred under similar circumstances. The Court cannot see how this treatment of Mr. Shack can show favoritism if Plaintiff has no evidence that white employees would have

---

[16]   The transfer Plaintiff sought would have been a voluntary move at his own initiative, while Mr. Shack's transfer was the result of an involuntary closure of his entire department; it is reasonable to assume that ISU would not place strict requirements on those employees who were involuntarily displaced, though it would hold those who sought voluntary transfers to the ordinary requirements.

been subject to more-stringent requirements if their departments were closed and the employees transferred to a different group. There are thus no suspicious background circumstances in this case, and his claim fails the first prong of the prima facie case.   Further, Defendant has proffered legitimate, non-discriminatory reasons for the actions of which Plaintiff complains. As discussed above, Plaintiff could not perform the requirements of his position with the 25-pound weight restriction, and was scheduled to be on medical leave for surgery beginning October 2, just a few days after Defendant sent him home to begin his leave on September 26; it was a rational decision for Defendant to send him home on reduced pay when there was no work for him because of his injury, and Plaintiff has not shown that this reason is false or that it is a pretext for discrimination.

### 3.    Direct Method

Plaintiff also has no evidence of "suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group" to support his discrimination claim under the direct method of proof; he discusses no white employees' experiences other than Mr. Cooper's, which, as discussed above, is too vague to be relied upon.[17] In addition, though he cites to Mr. Shack as a "similarly situated employee," Mr. Shack's treatment does not suffice to raise an inference of discrimination. As discussed above, it does not appear that Mr. Shack was in fact treated more favorably than Plaintiff or that he was similarly situated, and so Plaintiff cannot rely on him to make out his case for

---

[17]    The citation to Mr. Cooper's case cannot constitute evidence of suspicious "behavior toward or comments directed at other employees in the protected group." There is simply too little information on record for the Court to be able to use Mr. Cooper's case to draw any inferences of discrimination.

reverse discrimination under the direct method. As Plaintiff has failed to demonstrate the existence of a genuine issue of material fact as to his race discrimination claim, summary judgment must be granted in Defendant's favor on that issue.

## II.    Retaliation

Finally, Plaintiff claims that Defendant retaliated against him for his protected discrimination claims by taking action against his son and wife in their jobs at ISU. Title VII protects against retaliation for engaging in the protected activities of reporting or supporting a claim of discrimination. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009); *Nagle*, 554 F.3d at 1119. It is obvious, and no one disputes, that Plaintiff engaged in statutorily protected activity by filing a charge of discrimination with the EEOC in 2008. As to his son, Howard, Plaintiff cites Howard's conflict with Jeff Schaffer and Lori Schlink in and just prior to January 2010. Plaintiff also claims that his wife, Mary, was retaliatorily denied a day off in June 2010. (Doc. 18 at 9-10). Both of these claims must fail.

For a retaliation claim to succeed, the employer's allegedly retaliatory actions "must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). This standard does not rise to the level of the "materially adverse employment action" needed to sustain a discrimination claim, as "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him

harm *outside* the workplace."[18] *Id.* at 63 (citations omitted) (emphasis in original).
The Court here assumes, as does Defendant, that employment-related actions
against an employee's family members could in some cases constitute actionable
retaliation, though they do not in this case. As with discrimination claims, plaintiffs
"may establish unlawful retaliation using either the direct or indirect method of
proof." *Stephens*, 569 F.3d at 787. As to Howard, even if the reprimands he received
were unwarranted, there is no indication that anything more than a reprimand took
place. One's adult child experiencing one or two isolated, toothless reprimands at
work is hardly sufficient. Similarly, the University's denial of Mary one of the two
days off that she requested is too trivial to constitute retaliation within the terms of
Title VII. No reasonable jury could find that these would dissuade that a reasonable
employee from filing a charge of discrimination, and so Plaintiff's retaliation claim
fails the requirement of a sufficiently serious adverse action.

Moreover, Plaintiff cannot show any kind of causal connection between the
alleged retaliatory acts and his claims of discrimination. Under the direct method of
proof, a plaintiff must show both that the employer took an action that would
dissuade a reasonable employee from filing or supporting a claim of discrimination,
and that there is a causal connection between his complaint of discrimination and
the adverse action. *Id.* Not only has Plaintiff failed to cite a sufficient adverse action
by Defendant, he offers no evidence that causally connects his complaints of

---

[18]     There are some pre-*Burlington Northern* cases in our Circuit that appear to
indicate that the allegedly retaliatory action must be "materially adverse" in the
same way that an act of discrimination must be. This is not the case, and was
rejected by the Seventh Circuit even before *Burlington Northern*. *See Herrnreiter*,
315 F.3d at 745-46.

discrimination in 2008 with his son's and wife's 2010 experiences. Indeed, the well over one year gap between the complaint and the allegedly "adverse actions" indicates the lack of any causal connection. "A substantial time lapse between the protected activity and the adverse employment action 'is counter-evidence of any causal connection.'" *Filipovic v. K & R Exp. Systems, Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (citing *Johnson v. Univ. of Wis.-Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995) (four-month delay indicated lack of causal connection).

Plaintiff's retaliation claim would fail under the indirect method of proof, as well. In addition to citing to an action that would dissuade a reasonable employee from engaging in protected activity, which Plaintiff has not, a plaintiff proceeding under the indirect method of proof "must show…that he was treated less favorably than a similarly situated employee who did not complain of discrimination." *Stephens*, 569 F.3d at 786-87 (citing *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008). Plaintiff fails to show either of these elements: there was no serious-enough adverse action, as discussed above, and he points to no non-complaining employees whose family members were treated better by ISU, or even workers who were similarly situated to Howard and Mary who were treated better than they were.[19]

Plaintiff has failed to show the existence of a genuine issue of material fact as to his retaliation claim, and Defendant is entitled to judgment as a matter of law;

---

[19]    A review of Plaintiff's deposition reveals that he believed there were other employees in Mary's department who requested and were given the day off that Mary requested, but he could not name them; Mary's note regarding the incident fails to name these people, as well. (Shoultz Dep. at 88-90; Doc. 14, Ex. 8). This belief, especially as it does not reveal whether these people were similarly situated to Mary, is insufficient to withstand summary judgment.

Defendant's Motion for Summary Judgment is thus granted as to Plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 14) is GRANTED, and Plaintiff's Motion for Summary Judgment (Doc. 16) is DENIED AS MOOT. IT IS SO ORDERED.

CASE TERMINATED.

Entered this <u>1st</u> day of December, 2011.

s/ Joe B. McDade

_____

JOE BILLY McDADE

United States Senior District Judge
